# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIRVAIR SINGH,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; CUSTOMS AND BORDER PROTECTION; CITIZENSHIP AND IMMIGRATION SERVICES; IMMIGRATION AND CUSTOMS ENFORCEMENT; DEPARTMENT OF JUSTICE; WILLIAM P. BARR, ATTORNEY GENERAL OF THE UNITED STATES; CHAD F. WOLF, SECRETARY OF THE U.S. DHS; MARK A. MORGAN, ACTING COMMISSIONER OF U.S. CBP; KENNETH T. CUCCINELLI, DIRECTOR OF U.S. CIS; CARLA PROVOST, CHIEF, U.S. CBP; DAVID M. RADEL, DIRECTOR, LOS ANGELES ASYLUM OFFICE, U.S. CIS; DONNA P. CAMPAGNOLO, DISTRICT DIRECTOR, LOS ANGELES DISTRICT OFFICE, U.S. CIS; LORY C. TORRES, FIELD OFFICE DIRECTOR, LOS ANGELES FIELD OFFICE, U.S. CIS; GREGORY ARCHAMBEAULT, FIELD OFFICE DIRECTOR, SAN DIEGO FIELD OFFICE, U.S. CIS; KENNETH | Case No.: 20-CV-0165-GPC-AGS<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

SMITH, ASSISTANT FIELD OFFICE DIRECTOR, U.S. ICE; CHRIS LAROSE, WARDEN, OTAY MESA DETENTION CENTER, SAN DIEGO, CORECIVIC,

Respondents.

On January 24, 2020, Petitioner Nirvair Singh ("Petitioner"), a former detainee at the Otay Mesa Detention Center under the custody of the U.S. Department of Homeland Security ("DHS") pursuant to an expedited order of removal, filed a habeas petition, naming DHS, U.S. Citizenship and Immigration Services ("USCIS"), Immigration and Customs Enforcement ("ICE"), and several individual agency officials as respondents ("Respondents"). (ECF No. 1, Pet.) On February 21, 2020, Respondents filed a return in opposition to the habeas petition. (ECF No. 4, Ret.) Petitioner did not file a reply. For the following reasons, the Court **DENIES** the petition for writ of habeas corpus.

I. Background

A. The credible fear interview.

Petitioner is a native and citizen of India. (ECF No. 1, Pet. at ¶ 1.) On August 17, 2018, U.S. Border Patrol officers apprehended Petitioner and placed him in expedited removal proceedings after he unlawfully "entered the United States at/near San Ysidro, California[.]" (ECF No. 1-3, Scott Decl., Ex. F at 35[1].) While in custody, Petitioner expressed fear of returning to India based on political persecution. (ECF No. 1, Pet. at ¶ 10.) He accordingly requested asylum. (*Id.*)

---

[1] Page numbers are based on CM/ECF pagination.

On September 20, 2018, an asylum officer ("AO") interviewed Petitioner to determine whether he had a credible fear of persecution. (*Id.* at ¶ 2.) When the interview started, the AO asked Petitioner if he wished to have his interview postponed for two to five days to find an attorney. (ECF No. 1-3, Scott Decl., Ex. A at 2.) Petitioner declined and confirmed he felt comfortable proceeding. (*Id.* 2–3.) Shortly thereafter, the AO asked Petitioner if he had any mental or medical conditions or concerns. (*Id.* at 3.) Petitioner said he had none. (*Id.*) The AO also asked Petitioner if he was taking any medications. (*Id.*) Petitioner told the AO that he takes blood pressure pills, but had not taken his medication that day. (*Id.*) The AO followed up and asked Petitioner how he felt. (*Id.*) Petitioner replied, "[F]ine thank you." (*Id.*) The AO then continued the interview. (*Id.*)

Petitioner told the AO he was a member of the SAD-Mann party and claimed that members of the BJP party had persecuted him. (*Id.* at 6, 8.) He explained that he joined the SAD-Mann party because his brother had been a member of the same party for five years. (*Id.* at 6–7.) In response to the AO's questions on how he joined the party, Petitioner said he met people at a SAD-Mann party camp and requested to work for the party. (*Id.* at 7.) He was then told he was a "party member and . . . party worker now." (*Id.*) The AO pressed Petitioner for precise information on the process by which he joined the party, but Petitioner was unable to provide further details. (*Id.*) When the AO confronted Petitioner about his lack of detail, Petitioner responded, "[T]here are eye checks camps and blood camps—I liked it and thought I should help them." (*Id.*)

Petitioner reported he also received phone calls from SAD-Mann committee members with assignments. (*Id.* at 6–7.) These assignments included announcing SAD-Mann party camp events and encouraging people to attend. (*Id.*) He carried out these assignments approximately four times a month, beginning in 2017. (*Id.* at 6.) The AO asked Petitioner for the names of these SAD-Mann committee members, but Petitioner was unable to provide any. (*Id.* at 7.) The AO also asked Petitioner for the names of local party leaders. (*Id.* at 7–8.) Again, Petitioner could not provide any, stating "it is a very big party and it is hard." (*Id.* at 8.)

Petitioner further testified that BJP party members threatened him. (*Id.* at 5.) He initially said he had been threatened "2 or 3 times on the phone[.]" (*Id.*) Petitioner later stated that in December 2017, he received at least ten threatening phone calls from self-identifying BJP party members. (*Id.* at 10.) These calls instructed him to stop making announcements and to join the BJP party. (*Id.*) When the AO confronted Petitioner on his inconsistent reporting, Petitioner replied, "I gave you just an estimate of how many times I was threatened." (*Id.*)

Petitioner was also "attacked twice by members of the BJP party, and was told he would be killed if he did not join." (ECF No. 1, Pet. at ¶ 11.) On January 9, 2018, while Petitioner announced upcoming SAD-Mann programs at an event, four BJP party members approached Petitioner and "slapped . . . and punched" him. (ECF No. 1-3, Scott Decl., Ex. A at 8.) The assailants told Petitioner to stop making SAD-Mann party announcements and to join the BJP party. (*Id.*) On July 5, 2018, the same four assailants beat Petitioner unconscious after again telling him to stop making SAD-Mann party announcements and to join the BJP party. (*Id.* at 9.)

Petitioner and his father attempted to report these incidents to the police, but the police refused to take a report. (*Id.* at 10.) Instead, the police "ridiculed Petitioner . . . by calling him names and using bad words." (ECF No. 1, Pet. at ¶ 20.) As a result, "Petitioner paid a person . . . to help him get a visa so that he would not be killed if he remained in India." (*Id.* at ¶ 21.)[2] Before the interview concluded, Petitioner affirmed that he understood his interpreter and the questions the AO asked. (ECF No. 1-3, Scott Decl., Ex. A at 14.)

The AO determined Petitioner was not credible because his testimony lacked detail on two material aspects and had one material inconsistency. (*Id.*, Ex. B at 16–17.) The AO specifically cited Petitioner's inability to provide details on how he joined the SAD-

---

[2] At his credible fear interview, Petitoner told the AO he paid for his trip to the United States with money his father had borrowed. (ECF No. 1-3, Scott Decl., Ex. A at 5.)

Mann party; Petitioner's inability to provide the names of SAD-Mann committee members and local leaders; and Petitioner's inconsistency in reporting how many threats he received. (*Id.*) The AO accordingly determined Petitioner did not have a credible fear of persecution based on a finding of no credibility. (*Id.*, Ex. E at 32.)

On September 23, 2018, a supervising officer approved the AO's determination. (*Id.*, Ex. C at 23.) Petitioner subsequently requested *de novo* review by an immigration judge ("IJ"). (*Id.*, Ex. F at 36.)

### B. The immigration judge hearing.

On October 15, 2018, an IJ reviewed the AO's adverse credible fear determination. (*Id.*, Ex. I at 52.) At the IJ hearing, Petitioner's consultant attempted to introduce new evidence concerning the BJP party's involvement in the deaths of Petitioner's brother and nephew. (DAR[3] at 11:28–12:09.) Petitioner explained he did not initially report his family members' deaths to the AO because he felt unwell and was scared to tell the AO that he felt unwell. (*Id.* at 1:44–4:22.) The IJ, however, did not credit Petitioner's explanation. (*Id.* at 13:03–13:25.) In agreement with the AO, the IJ concluded Petitioner lacked credibility and found that Petitioner's "inability to provide an explanation that was satisfactory to the asylum officer" was not "indicative of confusion or a lack of understanding due to a medical concern." (*Id.* at 13:47–14:12.) The IJ told Petitioner he could seek to submit information on his medical condition and his family members' deaths to the AO for reconsideration. (*Id.* at 14:13–14:29.) As for the AO's findings of insufficient detail on two material aspects and one material inconsistency, the IJ determined Petitioner's explanations did not demonstrate "a lack of understanding of what was happening; they just show a lack of ability to explain because, quite frankly, the information was inconsistent." (*Id.* at 13:28–13:46.) The IJ accordingly affirmed the AO's adverse credible fear determination. (ECF No 1-3, Scott Decl., Ex. I at 52.)

---

[3] On February 21, 2020, Respondents lodged a digital audio recording ("DAR") in the form of one compact disc. (ECF No. 5.) The compact disc includes audio recordings of Petitioner's immigration hearing on October 15, 2018.

### C. Petitioner's federal court proceedings.

On November 6, 2018, Petitioner filed a Petition for Review in the Ninth Circuit. (*Id.*, Ex. L at 60–62.) The Ninth Circuit dismissed the Petition for lack of jurisdiction on June 27, 2019. (*Id.*, Ex. P at 76.) The Ninth Circuit advised Petitioner that his temporary stay of removal would terminate upon issuance of the mandate. (*Id.*) On August 19, 2019, the Ninth Circuit issued the mandate. (ECF No. 4-1, Prime Decl., Ex. B at 7.)

On January 24, 2020, while in custody, Petitioner filed a petition for writ of habeas corpus in this Court. (ECF No. 1, Pet.) Four days later, on January 28, 2020, Petitioner was removed from the United States. (ECF No. 4-1, Prime Decl., Ex. C at 9.) On February 21, 2020, Respondents filed a return, arguing in part that Petitioner's removal rendered his habeas petition moot. (ECF No. 4, Ret.) The Court issued an order on March 31, 2020, directing Petitioner to file a reply and address Respondents' mootness argument by April 8, 2020. (ECF No. 6, Reply Order.) Petitioner did not file a reply.

Pending before this Court is Petitioner's petition for writ of habeas corpus. Petitioner claims Respondents "acted in violation of their duties and responsibilities by detaining him without following proper procedures to allow him to file his claims and to have them properly adjudicated." (ECF No. 1, Pet. at ¶ 46.) He further alleges "the AO and IJ turned [a] very limited credible fear interview into a full-blown asylum merits or evidentiary hearing and refused common sense interpretations to basic facts of his claim." (*Id.* at ¶ 42.) Specifically, Petitioner contends the AO should have rescheduled the interview when Petitioner advised the AO that he had not taken his blood pressure medication. (*Id.* at ¶ 28.) "As a result of his continued interview," Petitioner submits, "[he] failed to give the officer key information about his fear of return to India, which included the death of his brother . . . and of his nephew[.]" (*Id.*)

Petitioner also contests the AO's reasons for making an adverse credibility determination. Petitioner maintains there was "nothing vague or inconsistent" about his testimony with respect to how he joined the SAD-Mann party, from whom he received assignments, and the number of times BJP party members threatened him. (*Id.* at ¶¶ 29–

30.) In addition to release from custody and a stay of removal, Petitioner requests a "correctly conducted Credible Fear Review Proceeding that will allow him to subsequently apply for and have his claims for asylum[.]" (*Id.* at ¶ 45.)

**II.     Discussion**

The instant petition presents three jurisdictional questions: (1) whether the petition has been rendered moot by the removal of Petitioner: (2) whether the Court, otherwise, has jurisdiction to entertain the petition; and (3) whether Petitioner has presented a cognizable procedural violation. The Court addresses these questions in turn.

    **A.     Jurisdiction to review Petitioner's habeas claims.**

Petitioner presents his petition for writ of habeas corpus and invokes this Court's jurisdiction under the Suspension Clause. (ECF No. 1, Pet. at ¶¶ 6–7.) Respondents argue that the petition is moot and that the Suspension Clause has no application. (ECF No. 4, Ret. at 4:11–27.)[4] The Court finds the petition is not moot and that it has jurisdiction under the Suspension Clause to review Petitioner's habeas claims for procedural violations.

        **a.     Petitioner's action is not moot.**

"Mootness is a threshold jurisdictional issue." *S. Pac. Transp. Co. v. Pub. Util. Comm'n of State of Or.*, 9 F.3d 807, 810 (9th Cir. 1993). The doctrine of mootness ensures a federal court presides only over those actions that present "a case or controversy under Article III, § 2 of the Constitution." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). An action is moot when a litigant no longer has "a personal stake in the outcome of the suit throughout 'all stages of federal judicial proceedings.'" *Abdala v. I.N.S.*, 488 F.3d 1061, 1063 (9th Cir. 2007) (quoting *United States v. Verdin*, 243 F.3d 1174, 1177 (9th Cir. 2001)). If an event occurs "that prevents the court from granting effective relief,

---

[4] Respondents also assert 8 U.S.C. § 1252(e)(2) is the Court's only basis for jurisdiction over habeas petitions challenging expedited removal orders. (ECF No. 4, Ret. at 6:22–24.) Petitioner has not invoked § 1252(e)(2) as a basis for jurisdiction. It is true § 1252(e)(2) is the Court's exclusive *statutory* basis for jurisdiction over the instant habeas petition. However, the Suspension Clause provides the Court with a *constitutional* basis for jurisdiction in this case.

the claim is moot and must be dismissed." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).

In the immigration context, "[d]eportation from the United States after filing a habeas petition does not necessarily moot a petitioner's claim." *Abdala*, 488 F.3d at 1063. Indeed, a removed petitioner need only establish two elements to sustain a habeas petition. First, the petitioner must file his habeas petition while in custody. *See id.* ("[T]he 'in custody' provision of 28 U.S.C. § 2254 requires only that a petitioner be incarcerated—or, as here, in INS custody—at the time a habeas petition is filed.") Second, the petitioner must show that a successful habeas petition could redress his removal order or a "collateral consequence" of his removal. *Blandino-Medina v. Holder*, 712 F.3d 1338, 1342 (9th Cir. 2013).

### i. Petitioner filed his habeas petition while in custody.

Petitioner filed a petition for writ of habeas corpus on January 24, 2020. (ECF No.1, Pet.) Petitioner was in custody until his removal from the United States four days later on January 28, 2020. (ECF No. 4-1, Prime Decl., Ex. C at 9.) Thus, Petitioner properly filed his habeas petition while in custody.

### ii. Petitioner's habeas petition could redress his removal order or a collateral consequence of his removal.

Respondents claim the habeas petition is moot because he only "seeks release from DHS custody and a stay of removal." (ECF No. 4, Ret. at 4:14–15.) Petitioner "is no longer in DHS custody, and his removal has been executed." (*Id.* at 4:16.) "Accordingly," Respondents argue, "the Petition should be dismissed as moot." (*Id.* at 4:16–17.)

Petitioner asserts that additional remedies exist so that his petition is not moot. Recently, the Ninth Circuit remanded a case to the district court to consider a petitioner's habeas "challenges to the procedures leading to his expedited removal order." *Thuraissigiam v. U.S. Dep't of Homeland Sec.*, 917 F.3d 1097, 1119 (9th Cir. 2019), *cert. granted sub nom. Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 427 (2019). Although the Ninth Circuit did not opine on precisely "what rights or rights [the

petitioner] may vindicate via use of the writ[,]" *id.*, the Ninth Circuit certainly contemplated the petitioner could avail himself of some form of a remedy if the district court concluded the government had violated the procedures underlying his expedited removal order. For instance, the remedy may consist of the petitioner's release from custody or implicate, if not require, a properly conducted expedited removal proceedings. *See Boumediene v. Bush*, 553 U.S. 723, 779 (2008) ("And the habeas court must have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted."); *Thuraissigiam*, 917 F.3d at 1118 ("Most important, habeas review provides important oversight of whether DHS complied with the required credible fear procedures."); *see, e.g.*, *Singh v. Holder*, 638 F.3d 1196, 1205–06 (9th Cir. 2011) ("[W]e remand this case . . . with instructions to grant the writ and order Singh's release unless . . . the agency provides Singh with a new *Casas* hearing applying the proper standard."); *Singh v. Barr*, 400 F. Supp. 3d 1005, 1022 (S.D. Cal. 2019) ("Although Mr. Singh has requested immediate [habeas] release, the Court believes the present situation may be remediated by granting the alternate request for a 'constitutionally adequate hearing' as to bond."); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 778 (N.D. Cal. 2019) (granting habeas relief and ordering a timely bond hearing or custodial release).

The same is true here. In addition to release from custody and a stay of removal, Petitioner requests "a correctly conducted Credible Fear Review Proceeding that will allow him to subsequently apply for and have his claims for asylum . . . properly adjudicated by a U.S. Asylum Officer and an Immigration Judge." (ECF No. 1, Pet. at ¶ 45.) If the Court determines Respondents violated the procedures underlying Petitioner's expedited removal order, the Court could grant habeas relief consisting of a properly conducted credible fear review proceeding that could redress his removal order. Thus, Petitioner's "direct challenge to the removal order" on the grounds of a procedurally defective credible fear review proceeding, "satisf[ies] the case-or-controversy requirement." *Blandino-Medina*, 712 F.3d at 1342; *see Singh v. Waters*, 87 F.3d 346, 349

(9th Cir. 1996) (granting habeas relief where petitioner was unlawfully removed despite a valid stay of deportation); *Thorsteinsson v. I.N.S.*, 724 F.2d 1365, 1367 (9th Cir. 1984) (recognizing petitioner may request judicial review of his deportation if procedures violated due process); *Estrada-Rosales v. I.N.S.*, 645 F.2d 819, 820 (9th Cir. 1981) ("This Court has held, however, than a [noncitizen] may properly petition for review of his deportation when he seeks to challenge the regularity of the deportation proceeding."); *Mendez v. I.N.S.*, 563 F.2d 956, 958 (9th Cir. 1977) (establishing petitioner may request judicial review of his deportation if procedures violated due process); *Mann v. Holder*, No. 12-CV-1926-AWI, 2013 WL 2664260, at *2 (E.D. Cal. June 12, 2013) (affirming direct challenge to removal satisfies the case-or-controversy requirement).

Moreover, as a result of his removal, Petitioner is prohibited from entering, attempting to enter, or being in the United States for a period of five years. (ECF No. 4-1, Prime Decl., Ex. C at 9.) This mandatory five-year ban is "a consequence of [Petitioner] having been found inadmissible as an arriving [noncitizen.]" (*Id.*) Petitioner's inability to reenter the United States for five years constitutes a sufficient collateral consequence to sustain his habeas petition. *See Handa v. Clark*, 401 F.3d 1129, 1132 (9th Cir. 2005) (asserting jurisdiction over habeas petition because petitioner's inadmissibility into the United States for ten years is a collateral consequence of his removal); *Zegarra-Gomez v. I.N.S.*, 314 F.3d 1124, 1127 (9th Cir. 2003) (finding petitioner's inability to seek return to the United States for twenty years is a sufficient collateral consequence). As with Petitioner's direct challenge to the removal order, habeas relief in the form of a correctly conducted credible fear review proceeding could redress the collateral consequence of a mandatory five-year ban. "Accordingly, because 'collateral consequences' remain, the Court can properly retain habeas jurisdiction over the petition." *Sandoval-Vela v. Napolitano*, No. 10-CV-0059-IEG, 2010 WL 364221, at *5 (S.D. Cal. Jan. 26, 2010).

Respondents insist the habeas petition is moot because Petitioner "stated no constitutional or other legal error by the IJ." (ECF No. 4, Ret. at 4:21–22.) The doctrine of mootness, however, does not ask if Petitioner has stated a constitutional or legal error.

The doctrine only "requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011). "If something happens during litigation that makes relief impossible, the case is moot." *Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1109 (9th Cir. 2020). Respondents contend this "something" is Petitioner's removal.

But, notwithstanding Petitioner's removal, relief is possible. As previously discussed, the Court could afford Petitioner a properly conducted credible fear review proceeding to redress his removal or mandatory five-year ban from reentering the United States. "[P]etitioner's removal did not moot his petition because a favorable ruling would have made it possible—at least hypothetically—for him to obtain a waiver of the ban on reentry." *Del Cid Marroquin v. Lynch*, 823 F.3d 933, 936 (9th Cir. 2016); *cf. Abdala*, 488 F.3d at 1064 ("By contrast, where the grounds for habeas relief will not redress collateral consequences, a habeas petition does not continue to present a live controversy once the petitioner is released from custody.")

For these reasons, the petition for writ of habeas corpus is not moot.

    **b.**  **The Court has jurisdiction under the Suspension Clause.**

Judicial review of expedited removal orders is strictly limited to those grounds enumerated in 8 U.S.C. § 1252(e)(2). 8 U.S.C. §§ 1252(a)(2)(A), 1252(a)(5). Under § 1252(e)(2), an individual in expedited removal proceedings may file a habeas petition in a federal district court to challenge only three DHS determinations: (1) whether the individual is a noncitizen, (2) whether the individual was ordered removed via expedited removal, and (3) whether the individual is a lawful permanent resident or has another status warranting exemption from expedited removal. 8 U.S.C. §§ 1252(e)(2)(A)-(C). Judicial review of whether a petitioner was ordered removed is "limited to whether such an order in fact was issued and whether it relates to the petitioner." 8 U.S.C. § 1252(e)(5). "There shall be no review of whether the [noncitizen] is actually inadmissible or entitled to any relief from removal." *Id.*

In certain circumstances, however, a petitioner may also challenge his expedited removal order by filing a habeas petition in a federal district court pursuant to the Suspension Clause. *Thuraissigiam*, 917 F.3d at 1119 (9th Cir. 2019). The Ninth Circuit outlined a two-step process to determine whether a federal district court has jurisdiction under the Suspension Clause over habeas petitions challenging expedited removal proceedings. *Thuraissigiam*, 917 F.3d at 1107. First, a court must ask whether the Suspension Clause applies to the petitioner. *Id.* Second, if the Suspension Clause applies, a court must consider whether § 1252(e)(2) provides review that satisfies the Suspension Clause. *Id.* "At a minimum, the Suspension Clause entitles the [petitioner] to a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." *Id.* at 1116 (quoting *Boumediene*, 553 U.S. at 779 (2008)) (internal quotation marks omitted).

### i.  The Suspension Clause applies to Petitioner.

The Suspension Clause applies to noncitizens apprehended within the United States. *Thuraissigiam*, 917 F.3d at 1115. Here, Petitioner unlawfully "entered the United States at/near San Ysidro, California" and was subsequently apprehended. (ECF No. 1-3, Scott Decl., Ex. F at 35.) The Suspension Clause, therefore, applies to Petitioner.

### ii.  Section 1252(e)(2) unlawfully suspends the writ of habeas corpus as applied to Petitioner.

Section 1252(e)(2) unlawfully suspends the writ of habeas corpus when an individual in expedited removal proceedings seeks to challenge the government's "failure to follow the required procedures and apply the correct legal standards[.]" *Thuraissigiam*, 917 F.3d. at 1116. "[B]ecause § 1252(e)(2) prevents a court from reviewing claims of procedural error relating to a negative credible fear determination, it precludes review of the agency's application of relevant law and thus raises serious Suspension Clause questions." *Id.* at 1119. For this reason, notwithstanding § 1252(e)(2)'s explicit limitation of judicial review to three factual determinations, an individual in expedited removal proceedings may file a habeas petition in a federal district court to challenge the

government's failure "to follow the required procedures and apply the correct legal standards when evaluating his credible fear claim." *Id.* at 1116.

Like the petitioner in *Thuraissigiam*, Petitioner in this case requests judicial review of an expedited removal order. (ECF No. 1, Pet. at ¶ 1.) Petitioner challenges "the procedures that led to the issuance of an expedited removal order against him, and his continued detention." (*Id.*) Petitioner alleges "he is being held, and was ordered removed, without having had a meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." (*Id.* at ¶ 3.) He claims "Respondents have acted in violation of their duties and responsibilities by detaining him without following proper procedures to allow him to file his claims and to have them properly adjudicated." (*Id.* at ¶ 46.) Based on Petitioner's claims of procedural violations and the Ninth Circuit's decision in *Thuraissigiam*, the Court finds § 1252(e)(2) unlawfully suspends the habeas writ as applied to Petitioner.

Since the Suspension Clause applies to Petitioner and § 1252(e)(2) unlawfully suspends the habeas writ as applied to Petitioner, the Court has jurisdiction to review Petitioner's habeas claims for procedural violations.

### B.  Petitioner's habeas claims have no merit.

Citing *Thuraissigiam*, Petitioner asserts this Court "has jurisdiction to review Credible Fear Review determinations made by an Immigration Judge under the Suspension Clause[.]" (ECF No. 1, Pet. at ¶ 7.) Respondents, on the other hand, maintain that this Court's jurisdiction is not plenary under *Thuraissigiam*. According to Respondents, the Court has "no habeas jurisdiction to review the sufficiency of adverse credibility findings or other factual findings[.]" (ECF No. 4, Ret. at 9:8–10.) The Court agrees with Respondents. The Suspension Clause gives the Court jurisdiction to review the instant habeas petition only for procedural violations. Since Petitioner's allegations do establish a cognizable procedural violation, his habeas claims have no merit.

#### a.  Petitioner fails to allege a cognizable procedural violation.

Under the expedited removal statute, an AO first determines whether an individual has a credible fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(ii). In assessing whether a credible fear of persecution exists, the AO may consider "the credibility of the statements made by the [individual] in support of the [individual's] claim and such other facts as are known to the officer, that the [individual] could establish eligibility for asylum[.]" 8 U.S.C. § 1225(b)(1)(B)(v). Similarly, when the petitioner requests *de novo* review with an IJ, the IJ determines "whether there is a significant possibility, taking into account the credibility of the statements made by the [individual] in support of the [individual's] claim and such other facts as are known to the immigration judge, that the [individual] could establish eligibility for asylum[.]" 8 C.F.R. § 1003.42(d)(1).

An individual in expedited removal proceedings may file a habeas petition in federal district court to ensure the AO and IJ "complied with the required credible fear procedures." *Thuraissigiam*, 917 F.3d at 1118. However, in reviewing a habeas petition for procedural violations, a court cannot reweigh the AO's or IJ's discretionary determinations. *See id.* at 1116 n. 20 ("We therefore do not consider here whether the Suspension Clause requires judicial review of DHS' credible fear determination on the merits."); *Mnatsakanyan v. U.S. Dep't of Homeland Sec.*, No. 19-CV-1987-GPC, 2020 WL 1245371, at *8 (S.D. Cal. Mar. 16, 2020) ("Moreover, the Court has no jurisdiction to consider the IJ's discretionary credibility determination."); *Patel v. U.S. Dep't of Homeland Sec.*, No. C19-1690-MJP-MLP, 2020 WL 1067833, at *7 (W.D. Wash. Feb. 13, 2020), *report and recommendation adopted*, No. C19-1690-MJP, 2020 WL 1062943 (W.D. Wash. Mar. 5, 2020) ("But as the Government contends, *Thuraissigiam* did not establish that the Suspension Clause requires judicial review of the merits of a credible fear for determination."); *Singh v. U.S. Dep't of Homeland Sec.,* No. C19-1224-JLR-MAT, 2020 WL 420589, at *9 (W.D. Wash. Jan. 3, 2020), *report and recommendation adopted*, No. C19-1224-JLR, 2020 WL 419755 (W.D. Wash. Jan. 24, 2020) ("*Thuraissigiam* did not establish that the Suspension Clause requires judicial review of the merits of a credible fear determination. . . . the Court does not have jurisdiction over

petitioner's challenge to the merits of AO's finding that he was not credible and the IJ's affirmance of this decision."); *Funes Suazo v. McAleenan*, No. 19-CV-1882-LAB, 2019 WL 4849188, at *1 (S.D. Cal. Oct. 1, 2019) ("[*Thuraissigiam*] does not appear to provide for judicial review of an immigration judge's discretionary determinations."); *Lopez-Mendoza v. Barr*, No. 19-CV-1448-DSF-AS, 2019 WL 6710861, at *5 (C.D. Cal. Sept. 11, 2019), *report and recommendation adopted*, 2019 WL 6709540 (C.D. Cal. Oct. 23, 2019) ("The Court lacks jurisdiction over these claims. . . . Petitioner is challenging the immigration judge's factual determinations and calling upon this Court to reweigh the evidence.").

### i. The asylum officer's discretionary determinations.[5]

Petitioner challenges the AO's reasons for making an adverse credibility determination. He insists there was "nothing vague or inconsistent" about his testimony with respect to how he joined the SAD-Mann party, who gave him assignments, and the number of times BJP party members threatened him. (ECF No.1, Pet. at ¶¶ 29–30.)

Petitioner told the AO that he was a SAD-Mann party member and BJP party members had persecuted him. (ECF No. 1-3, Scott Decl., Ex. A at 6, 8.) He explained that he joined the SAD-Mann party because his brother had been a member of the same party for five years. (*Id.* at 6–7.) The AO asked "a total of 4 different questions for further details on how he joined the party and was unable to provide more information." (*Id.*, Ex. B at 16.) During this exchange, Petitioner said he met people at a SAD-Mann party camp and requested to work for the party. (*Id.*, Ex. A at 7.) He was then told he was a "party member and . . . party worker now." (*Id.*) Seeking specific information on the process by

---

[5] Respondents argue "only the IJ's actions are material because any alleged irregularities are to be resolved before the IJ." (ECF No. 4, Ret. at 9:2–3.) In *Thuraissigiam*, the petitioner alleged that both the AO and IJ had violated regulations governing his expedited removal proceedings. 917 F.3d at 1102. The Ninth Circuit made no distinction between the AO's and IJ's actions for purposes of habeas review. In fact, the Ninth Circuit stressed that "habeas review provides important oversight of whether DHS complied with the required credible fear procedures." *Id.* at 1118. As Respondents acknowledge, AOs are employees of USCIS. (ECF No. 4, Ret. at 5:21.) And USCIS is a component of DHS. 8 C.F.R. §§ 1001.1, 1.1. Accordingly, the Court reviews the AO's actions in this case.

which Petitioner joined the party, the AO confronted Petitioner on his lack of details. (*Id.*, Ex. B at 16.) Petitioner responded, "[T]here are eye checks camps and blood camps—I like it and thought I should help them." (*Id.*, Ex. A at 7.) The AO found Petitioner's response "unreasonable as it [did] not address the core of the nonconsistency [*sic*]." (*Id.*, Ex. B at 16.) The AO further explained, "It is reasonable to expect an applicant that volunteered with a political party for approximately 4 times a month since 2017 to provide details on how he joined the party and became a party worker." (*Id.*)

Petitioner reported SAD-Mann committee members called him with assignments. (*Id.*, Ex. A at 6–7.) These assignments included announcing SAD-Mann party events and encouraging people to attend. (*Id.*) He carried out this work approximately four times a month since 2017. (*Id.* at 6.) The AO asked Petitioner for the names of the committee members who gave him assignments. (*Id.* at 7.) Petitioner was unable to provide any. (*Id.*) The AO also asked Petitioner for the names of local party leaders. (*Id.* at 7–8.) Again, Petitioner could not provide any, stating "it is a very big party and it is hard." (*Id.* at 8.) The AO found Petitioner's explanation unreasonable given his work with the SAD-Mann party for approximately four times a month since 2017. (*Id.*, Ex. B at 17.)

Petitioner also testified that BJP party members threatened him. (*Id.*, Ex. A at 5.) At first, he claimed BJP party members threatened him "2 or 3 times on the phone[.]" (*Id.*) Later in the interview, Petitioner said that in December 2017, he received at least ten threatening phone calls from self-identifying BJP party members. (*Id.* at 10.) These threatening phone calls instructed him to stop making announcements and to join the BJP party. (*Id.*) When confronted about this inconsistency, Petitioner replied, "I gave you just an estimate of how many times I was threatened." (*Id.*) The AO found "that such a large discrepancy [was] not consistent or reasonable" because Petitioner "has a 10th grade level of education, was able to understand his Punjabi interpreter, and testified that he understood all questions asked by the officer." (*Id.*, Ex. B at 16.)

The AO found Petitioner not credible because he could neither describe precisely how he joined the SAD-Mann party nor provide the names of committee members or

local party leaders. In addition to these insufficient details, the AO considered Petitioner's inconsistency in reporting the number of threats too dramatic to be reasonable. The AO's reasons in support of her adverse credibility determination do not implicate a procedural error. Rather, Petitioner's allegations ask this Court to do precisely what it cannot: reweigh the evidence. Even if this Court may have reached a different conclusion, "the Court is barred from reweighing the evidence in a credible fear determination." *Paz-Zamora v. Archambeault*, No. 18-CV-2187-GPC, 2018 WL 5785287, at *3 (S.D. Cal. Nov. 5, 2018).

Petitioner also claims the AO should have rescheduled the interview when Petitioner advised the AO that he had not taken his blood pressure medicine. (ECF No. 1, Pet. at ¶ 28.) "As a result of his continued interview," Petitioner argues, "[he] failed to give the officer key information about his fear of return to India, which included the death of his brother . . . and of his nephew[.]" (*Id.*)

At the beginning of the interview, the AO asked Petitioner if he wished to have his interview postponed for two to five days, so he could find an attorney. (ECF No. 1-3, Scott Decl., Ex. A at 2.) Petitioner declined and said he felt comfortable proceeding. (*Id.* 2–3.) Shortly after, the AO asked Petitioner if he had any mental or medical conditions or concerns. (*Id.* at 3.) Petitioner said he did not. (*Id.*) The AO also asked Petitioner if he was currently taking any medications. (*Id.*) Petitioner reported that he was taking blood pressure pills, but had not taken his medicine that day. (*Id.*) The AO followed up and asked Petitioner how he felt. (*Id.*) Petitioner replied, "[F]ine thank you." (*Id.*) Only then did the AO proceed with the interview. When the interview concluded, Petitioner affirmed he understood his interpreter and the questions asked. (*Id.* at 14.)

The Court concludes that the AO's decision to continue the interview was within her discretion. The record reflects that Petitioner understood his proceedings and that the AO conducted an adequate interview. The AO followed up repeatedly on those issues she considered material to Petitioner's credible fear application. When the AO did not obtain

sufficiently detailed answers or an inconsistent response, she provided Petitioner with opportunities to supplement his answers and to explain his response.

Moreover, the AO invited Petitioner to postpone the interview if he wished to secure an attorney, yet Petitioner never asked the AO to terminate the interview for any reason. *See, e.g.*, *Lizhi-Oiu v. Barr*, 944 F.3d 837, 840 (9th Cir. 2019) (describing termination of asylum interview when petitioner said she felt unwell and declined to interview). There is also no indication the AO coerced Petitioner, caused Petitioner duress, or engaged in some improper behavior to find that Petitioner's statements were involuntary made. *See, e.g.*, *Hernandez-Segovia v. Barr*, 763 F. App'x 613, 615 (9th Cir. 2019) (finding statements at credible fear interview were voluntarily made because the record does not suggest duress or coercion). Petitioner merely disagrees with the AO's discretionary determinations and has failed to allege a cognizable procedural violation. *See Mehla v. U.S. Dep't of Homeland Sec.*, No. 19-CV-2245-WQH, 2019 WL 6611508, at *6 (S.D. Cal. Dec. 5, 2019) ("Petitioner simply disagrees with the officer's discretionary conclusion. This is not a claim that the Ninth Circuit has found the Court has jurisdiction to review.").

### ii. The immigration judge's discretionary determinations.

Petitioner also alleges the "IJ turned [a] very limited credible fear interview into a full-blown asylum merits or evidentiary hearing and refused common sense interpretations to basic facts of his claim." (ECF No. 1, Pet. at ¶ 42.)

At the IJ hearing, Petitioner said he did not report the death of his family members at the hands of BJP party members to the AO because he felt unwell and was scared to tell the AO that he felt unwell. (DAR at 1:44–4:22.)[6] The IJ, however, did not credit Petitioner's explanation. (*Id.* at 13:03–13:25.) The IJ concluded Petitioner lacked

---

[6] The Court notes that Petitioner's consultant attempted to introduce evidence of the family members' deaths at the IJ hearing. (DAR at 6:56–7:30.) The IJ declined to consider the evidence, as it was not in the record before the asylum officer. (*Id.* at 6:56–7:30.) Petitioner does not challenge the IJ's refusal to consider this evidence. Therefore, the Court does not address the procedural propriety of the IJ's refusal.

credibility and found that Petitioner's "inability to provide an explanation that was satisfactory to the asylum officer" was not "indicative of confusion or a lack of understanding due to a medical concern." (*Id.* at 13:47–14:12.) The IJ also found that Petitioner's explanations did not demonstrate "a lack of understanding of what was happening; they just show a lack of ability to explain because, quite frankly, the information was inconsistent." (*Id.* at 13:28–13:46.) For these reasons, the IJ affirmed the AO's adverse credible fear determination.

Petitioner's broad allegation that the IJ turned his credible fear interview into an asylum or evidentiary hearing establishes no cognizable procedural violation. Neither the record nor Petitioner's allegations suggest the IJ violated any procedures in affirming the AO's adverse credible fear determination.[7] Petitioner "cannot create jurisdiction by alleging 'nothing more than a challenge to the [IJ's] discretionary and fact-finding exercises cloaked as a question of law.'" *See Rais v. Holder*, 768 F.3d 453, 462 n. 17 (6th Cir. 2014) (quoting *Abdul v. Holder*, 326 F. App'x 344, 347 (6th Cir. 2009)).

In sum, Petitioner fails to establish that either the AO or IJ committed a procedural error. Petitioner's allegations only ask this Court to reweigh discretionary determinations. The law does not permit this. As a result, Petitioner's habeas claims have no merit.

### III. Conclusion

Accordingly, the Court **DENIES** the petition for writ of habeas corpus. The Clerk of Court shall close the case.

**IT IS SO ORDERED.**

Dated: May 5, 2020

Hon. Gonzalo P. Curiel
United States District Judge

---

[7] On the contrary, the IJ informed Petitioner that he could seek to submit information on his medical condition and the deaths of his family members to the AO for reconsideration. (DAR 14:13–14:29.) DHS "may reconsider a negative credible fear finding that has been concurred upon by an immigration judge after providing notice of its reconsideration to the immigration judge." 8 C.F.R. § 1208.30(g)(2)(iv)(A). Petitioner did not pursue this recourse. (ECF No. 4, Ret. at 3:27–28.)